**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYLER WRIGHT,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **CARPENTER TECHNOLOGY** | : | |
| **CORPORATION,** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Tyler Wright (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Carpenter Technology Corporation (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990 ("ADA"), as amended, the Pennsylvania Human Relations Act ("PHRA") and public policy.  In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Mohnton, PA.

3. Upon information and belief, Carpenter Technology Corporation is a manufacturer, fabricator and distributor of specialty metals with a location at 2120 Centre Avenue, Reading, PA 19605 and with a corporate headquarters located at 1735 Market Street, 15th

Floor, Philadelphia, PA 19103.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under the ADA and the PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Defendant.

14. The Charge was assigned Charge Number 530-2025-02059 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and the Notice is dated April 8, 2026. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

**MATERIAL FACTS**

**PLAINTIFF'S EMPLOYMENT HISTORY**

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On or about February 27, 2023, Defendant hired Plaintiff in the position of Operations Assistant.

21. Plaintiff was well qualified for his position and performed well.

**PLAINTIFF SUFFERED A WORKPLACE INJURY AND BECAME DISABLED AS A RESULT**

22. On or about August 9, 2023, Plaintiff suffered a workplace injury.

23. Specifically, Plaintiff had his thumb crushed by a machine due to Angel Melendez's, Crane Runner, gross negligence.

24. Plaintiff's crushed thumb was a serious health condition that is considered to be a disability under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

25. The major life activities affected by Plaintiff's disability include, but are not limited to, lifting, carrying and performing manual tasks.

**PLAINTIFF HAD PREVIOUSLY MADE MULTIPLE COMPLAINTS OF MELENDEZ'S UNSAFE WORK PRACTICES**

26. Importantly, Plaintiff had been reporting Melendez's unsafe workplace practices to Brad Kessler, Supervisor, for weeks prior.

27. Plaintiff warned Kessler that Melendez was going to seriously harm or kill someone due to his lack of safe practices while using Defendant's equipment.

## MELENDEZ INJURED ANOTHER EMPLOYEE TWO (2) WEEKS PRIOR TO INJURING PLAINTIFF

28. In fact, Melendez injured Gary Rumburger, VIM Department, just two (2) weeks prior to Plaintiff's workplace injury by running hot, heavy chains over Rumburger's neck.

29. Further, upon information and belief, several other employees of Defendant thought Melendez was under the influence of drugs and/or alcohol at work, leading to his gross negligence.

## DEFENDANT SENT PLAINTIFF TO THE EMERGENCY ROOM FOR TREATMENT

30. Ryan Gumby, Flex Utility Worker, witnessed Plaintiff's workplace injury.

31. Further, Kessler inspected the injury just after it occurred.

32. Kessler sent Plaintiff to Defendant's on duty nurse (name unknown).

33. The nurse told Plaintiff that she could wrap Plaintiff's thumb and he could go back to work immediately.

34. However, Plaintiff's thumb was severely destroyed.

35. Plaintiff was then taken to the Emergency Room for treatment by Defendant's EMS once the onsite doctor (name unknown) examined Plaintiff.

## PLAINTIFF WAS TREATED AT THE EMERGENCY ROOM AND PLACED ON A THREE (3) WEEK LEAVE OF ABSENCE

36. Plaintiff went to the Emergency Room immediately.

37. Plaintiff stayed overnight and was discharged on or about the morning of August 10, 2023.

38. However, the treating Emergency Room physician immediately placed Plaintiff on a three (3) week medical leave of absence to prevent infection.

39. Plaintiff sent this paperwork to Jan Franks, Head of Human Resources.

### PLAINTIFF RETURNED TO WORK ON LIGHT DUTY

40. In or around the first week of September 2023, Plaintiff returned to work on light duty.

41. Specifically, Dr. Brian Tinsley, Orthopedic Associates of Reading, sent a doctor's note to Defendant stating that Plaintiff could not use his right hand.

42. As a result, Defendant placed Plaintiff on sedentary work.

43. Plaintiff performed office duties at Defendant.

44. Upon information and belief, Defendant had plenty of light duty work assignments for Plaintiff.

45. Per Dr. Tinsley's note, Plaintiff was to remain on light duty until Dr. Tinsley cleared him to return to work at full duty at a later date.

### DEFENDANT'S SAFETY SPECIALIST INTERVIEWED PLAINTIFF REGARDING HIS WORKPLACE INJURY

46. Approximately one (1) week after his return to work, Matt Last Name Unknown ("LNU"), Safety Specialist, interviewed Plaintiff.

47. During this interview, Plaintiff complained about Defendant's safety violations in regard to their cranes.

48. Plaintiff also complained about Melendez's gross negligence.

49. Plaintiff stated he might complain to OSHA about Defendant's unsafe practices.

### PLAINTIFF REMAINED ON LIGHT DUTY THROUGHOUT 2023

50. Plaintiff remained on light duty through the new year, as he had not been cleared to work at full capacity.

### MATT INTERVIEWED PLAINTIFF A SECOND TIME

51. In or around early February 2024, Matt interviewed Plaintiff again.

52. During this interview, Plaintiff stated that if he believed someone was operating machinery unsafely under the influence again, he would call the police.

53. Plaintiff also stated he was going to hire legal counsel to handle his workers' compensation claim.

## DEFENDANT RECEIVED PLAINTIFF'S MEDICAL DOCUMENTATION WHICH STATED PLAINTIFF HAS EPILEPSY

54. Upon information and belief, at this time, Defendant had received all of Plaintiff's medical documentation from his doctors.

55. Importantly, Plaintiff has epilepsy.

56. Plaintiff did not disclose this to Defendant prior as he did not need a medical accommodation for this disability, nor did it affect his ability to perform his job duties at Defendant.

57. However, upon information and belief, Defendant learned of this disability through Plaintiff's medical documentation.

## FRANKS PLACED PLAINTIFF ON A LEAVE OF ABSENCE, STATING THAT DEFENDANT COULD NOT ACCOMMODATE PLAINTIFF'S LIGHT DUTY ASSIGNMENT FOR MORE THAN SIX (6) MONTHS

58. On or about February 9, 2024, less than a week after his interview, Franks called Plaintiff.

59. Franks told Plaintiff not to return to work thereafter, as Defendant had a policy that Plaintiff could not be on light duty work for more than six (6) months.

60. Plaintiff had not been told about this policy prior.

61. Further, Mark LNU, Maintenance Technician, another employee on workers' compensation, told Plaintiff that there were still plenty of light duty assignments for Plaintiff to perform.

7

62. As a result of Franks' instructions, Plaintiff did not return to work.

63. Plaintiff remained on a medical leave of absence.

## DEFENDANT INSTRUCTED PLAINTIFF TO UNDERGO AN INDEPENDENT MEDICAL EXAMINATION

64. In or around June 2024, Defendant instructed Plaintiff to have an Independent Medical

Examination ("IME") performed to see if Plaintiff could return to work.

## THE DOCTOR WHO CONDUCTED THE IME, CONTINUED PLAINTIFF'S PLACEMENT ON LIGHT DUTY

65. Dr. John Klein conducted Plaintiff's IME and determined that Plaintiff could only return

to work on light duty, not full duty.

66. Plaintiff informed Defendant of this.

## DEFENDANT REFUSED TO LET PLAINTIFF RETURN TO WORK ON LIGHT DUTY

67. Nicole LNU, Human Resources Representative, and Franks refused to let Plaintiff return

to work on light duty, despite light duty assignments being available in which Plaintiff

could perform.

## NICOLE INFORMED PLAINTIFF THAT HE WOULD BE TERMINATED IF HE WAS NOT ABLE TO RETURN TO WORK AT FULL DUTY UPON THE ONE (1) YEAR ANNIVERSARY OF HIS WORKPLACE INJURY

68. In or around July 2024, Nicole called Plaintiff three (3) times.

69. Nicole stated that Defendant was going to terminate Plaintiff's employment on the one

(1) year anniversary of his workplace injury if Plaintiff could not return to work at full

duty.

70. Plaintiff had still not been cleared for full duty.

## DEFENDANT TERMINATED PLAINTIFF

71. On or about August 9, 2024, on the one-year anniversary of the injury, Nicole called Plaintiff.

72. Nicole terminated Plaintiff's employment due to being on workers' compensation for a year and for not previously disclosing his epilepsy diagnosis.

73. Importantly, in Plaintiff's workers' compensation lawsuit, Defendant stated Plaintiff's position title was a Flex Utility Worker, but Plaintiff was only trained to be an Operations Assistant at Defendant.

74. As Plaintiff was not provided the safety training to be a Flex Utility Worker, he would not have been qualified to perform the job duties.

75. Defendant discriminated against Plaintiff due to his disability, failed to accommodate Plaintiff and retaliated against Plaintiff for complaining of disability discrimination and/or taking a medical leave of absence in violation of the ADA and the PHRA.

76. Defendant retaliated against Plaintiff by wrongfully terminating his employment for filing a workers' claim and complaining about safety concerns.

77. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

78. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

79. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all time relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

80. Plaintiff was qualified to perform the job.

81. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

82. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

83. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

84. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

85. The purported reason for Defendant's decision is pretextual.

86. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

87. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

88. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – DISABILITY DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

89. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

90. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all time relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

91. Plaintiff was qualified to perform the job.

92. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

93. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

94. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

95. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

96. The purported reason for Defendant's decision is pretextual.

97. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

98. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

99. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT III – RETALIATION
### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

100. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

101. Plaintiff engaged in activity protected by the ADA when he requested a reasonable accommodation and reported disability discrimination.

102. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

103. There exists a causal connection between Plaintiff's participation of the protected

activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

104. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

105. Plaintiff engaged in activity protected by the PHRA when he requested a reasonable accommodation and reported disability discrimination.

106. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

107. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – WRONGFUL TERMINATION
## VIOLATION OF PUBLIC POLICY

108. Plaintiff incorporates the proceeding paragraphs as if set more fully at length herein.

109. Plaintiff was an at-will employee with Defendant.

110. Although Pennsylvania adheres to the at-will employment doctrine, an employee may bring a cause of action for termination "where the termination implicates a clear mandate of public policy." *Weaver v. Harpster,* 975 A.2d 555, 563 (Pa. 2009).

111. Plaintiff's reports of safety concerns were protected by and consistent with this public policy, and Plaintiff was professionally and ethically obligated to make such reports.

112. Plaintiff filed a workers' compensation claim as a result of his workplace injury.

113. Defendant terminated Plaintiff's employment because she engaged in conduct that is protected by, and required under, public policy.

114. This is a violation of the at-will employment doctrine in Pennsylvania.

115. As a direct and proximate result of Defendant's wrongful termination of Plaintiff in violation of public policy, Plaintiff has suffered the damages set forth above.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Tyer Wright, requests that the Court grant him the following relief against Defendant:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Liquidated damages;

(d)     Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, the PHRA and public policy.

(j)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in,  training  programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged,

all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: July 7, 2026                     By:   */s/ David M. Koller*
                                              David M. Koller, Esquire (90119)
                                              Jordan D. Santo, Esquire (320573)
                                              2043 Locust Street, Suite 1B
                                              Philadelphia, PA 19103
                                              215-545-8917
                                              davidk@kollerlawfirm.com
                                              jordans@kollerlawfirm.com

                                              *Counsel for Plaintiff*

14